IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WILLIAM ANTHONY COLÓN,

Plaintiff

v.

RUBÉN BLADES, ROBERTO
MORGALO, MARTÍNEZ, MORGALO &
ASSOCIATES,

Defendants                                          CIVIL 07-1380 (JA)

RUBÉN BLADES,

Cross-Plaintiff

v.

ROBERTO MORGALO, in his personal
capacity, and as owner and member
of MARTÍNEZ, MORGALO &
ASSOCIATES, LLC; MARTÍNEZ,
MORGALO & ASSOCIATES, LLC,

Cross-Defendants

## OPINION AND ORDER

This matter is before the court on motion for summary judgment filed by

cross-defendants, Roberto Morgalo, in his personal capacity, and as owner and

member of Martínez, Morgalo & Associates, LLC; Martínez, Morgalo & Associates,

LLC, on June 28, 2010.  (Docket No. 230)  Cross-plaintiff, Rubén Blades, opposed

cross-defendant's motion on July 13, 2010.  (Docket No. 233.)  On August 18,

CIVIL 07-1380 (JA)                    2

2010, cross-defendants replied.  (Docket No. 243.)  For the reasons set forth below, the motion for summary judgment is hereby DENIED.

## I. OVERVIEW

Cross-defendants argue that cross-plaintiff lacks standing to sue for breach of contract and breach of fiduciary duty because the injuries alleged in the amended cross claim were allegedly suffered only by Rubén Blades Productions Inc. ("RBP"), and not by cross-plaintiff himself.  (Docket No. 230, at 2.)  According to cross-defendants, all dealings between Martínez, Morgalo & Associates, LLC ("MM&A"),  and cross-plaintiff were done through RBP who is not a party in this case.  (Id. at 4.)  They state that all moneys collected by MM&A as booking agents of cross-plaintiff were done for RBP and not for cross-plaintiff in his personal capacity.  (Id.)  Specifically, cross-defendants state that all monies received by MM&A for the *Siembra* concert held on May 3, 2003 in Puerto Rico, where cross-plaintiff and Willy A. Colón performed, were not transferred and paid to the artists but to their respective companies, that is Elmalo, Inc. ("EMI") and RBP.  (Id. at 5.); see Colon v. Blades, 2009 WL 2612523 at 5.  Additionally, they claim that RBP was the one who paid the taxes to the Commonwealth of Puerto Rico for the money that was collected.  (Id.)  Moreover, cross-defendants argue that the loan that cross-plaintiff allegedly took from Victor Manuel was not taken by him in his

CIVIL 07-1380 (JA)                        3

personal capacity and was paid with monies from RBP.  (Id.)  As to the out of

pocket expenses incurred by cross-plaintiff for the *Siembra* concert, cross-

defendants claim that they were fully reimbursed by RBP.  (Id.)  Thus, cross-

defendants posit that because cross-plaintiff did not suffer any type of

individualized harm he lacks standing to assert any of his claims and as a result

the amended cross-claim has to be dismissed. (Id. at 7.)

Cross-plaintiff counters that he is the proper party to this case.  (Docket No.

233, at 3.)  He argues that cross-defendants argument is disingenuous.  (Id. at

4.)  According to cross-plaintiff, if the cross-defendants believe that the cause of

action is not being prosecuted by the real party in interest, they should have

objected under Fed. R. Civ. P. 17(a).  (Id. at 6.)  He argues that determining

whether a party has standing comes into play when a court has to resolve an

actual case or controversy, while Rule 17(a) ensures that a judgment is entered

for or against the correct party.  (Id.)  Cross-plaintiff asserts that he has standing

to pursue his claims against cross-defendants.  (Id. at 7.)  However, he claims

that by cross-defendants claiming that RBP would be the ultimate recipient of any

damages that might be awarded, the inquiry in this case should not be whether

he has standing but rather whether he is the real party in interest  pursuant to

Rule 17(a).  (Id. at 8.)  Although cross-plaintiff believes that an objection under

CIVIL 07-1380 (JA)                    4

Rule 17(a) is untimely and should be deemed waived, he submits that he is the real party in interest to this case.  (Id. at 8 & 9.)  Thus, he argues that since the merits of the amended cross claim have already been adjudicated and default judgment has been rendered against MM&A, cross-defendants' motion for summary judgment should be denied.  (Id. at 7.)

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor.  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence

CIVIL 07-1380 (JA)                    5

presented by the movant. López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)).   A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." Id.; see also Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

The court must view the facts in a light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor. See Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002).  A fact is considered material if it has the potential to affect the outcome of the case under applicable law. Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

Additionally, the facts must be supported by specific reference to the record, thereby pointing the court to any genuine issues of material fact and eliminating the problem of the court having "to ferret through the Record." Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997); see also Carmona-Ríos v. Aramark Corp., 139 F. Supp. 2d 210, 214-15 (D.P.R. 2001); Velázquez-Casillas v. Forest Lab., Inc., 90 F. Supp. 2d 161, 163 (D.P.R. 2000).  Failure to comply

CIVIL 07-1380 (JA)                    6

with this rule may result, where appropriate, in judgment in favor of the opposing party.  Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001).

B. Local Rule 56

In this court, Local Rule 56(b), previously Local Rule 311.12, requires a motion for summary judgment to be accompanied by a separate, short and concise statement of material facts that supports the moving party's claim that there are no genuine issues of material fact in dispute.  Davila v. Potter, 550 F. Supp. 2d 234, 238 (D.P.R. 2007) (citing D.P.R. L. Civ. R 56).  These facts are then deemed admitted until the nonmoving party provides a similarly separate, short and concise statement of material facts establishing that there is a genuine issue in dispute.  D.P.R. L. Civ. R 56(e); Morales v. A.C. Orssleff's EFTF, 246 F.3d at 33; Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000); Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727; see also Corrada-Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001).  "Additionally, the facts must be supported by specific reference to the record, thereby pointing the court to any genuine issues of material fact and eliminating the problem of the court having 'to ferret through the Record.'" Pica-Hernández v. Irizarry-Pagán, 671 F. Supp. 2d 289, 293 (D.P.R. 2009) (quoting Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727).  "Any statement of fact provided by any party which is not supported by citation to the

CIVIL 07-1380 (JA)                              7

record may be disregarded by the court, and any supported statement which is not properly presented by the other party shall be deemed admitted." Del Toro-Pacheco v. Pereira-Castillo, 662 F. Supp. 2d 202, 210 (D.P.R. 2009).  "Failure to comply with this rule may result, where appropriate, in judgment in favor of the opposing party."  Id.  (citing Morales v. A.C. Orssleff's EFTF, 246 F.3d at 33; Stepanischen v. Merch. Despatch Transp. Corp., 722 F.2d 922, 932 (1st Cir. 1983)).  Also, "[t]he First Circuit has repeatedly held that the district court is justified in deeming one party's submitted uncontested facts to be admitted when the other party fails to file an opposition in compliance with Local Rule 56." González-Rodríguez v. Potter, 605 F. Supp. 2d 349, 357 (D.P.R. 2009) (citing Fontanez-Nuñez v. Janssen Ortho LLC, 447 F.3d 50, 55 (1st Cir.2006); Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir.2003); Corrada-Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43-44 (1st Cir.2001)).

        After examining cross-defendants' statement of uncontested facts and cross-plaintiff's opposition to those facts (Docket Nos. 231 & 233-1), I find there are no genuine issues as to the following facts:

        1. Mr. Blades is of legal age and a resident of the United States.

CIVIL 07-1380 (JA)                    8

2. RBP is a Type S corporation under federal tax law and was incorporated in the State of New York on January 23, 1986 with its principal place of business in Boca Ratón, Florida.

3. Mr. Morgalo is of legal age, married, and resident of the State of Florida.

4. From December 1999 until early 2000, MM&A performed booking duties on behalf of Mr. Blades through RBP.

5. RBP is managed by Shustek & Associates, LLC.  Mr. Blades is an employee and sole stockholder of RBP.

6. All monies received by MM&A for the *Siembra* concert were not transferred or paid to Mr. Colón and Mr. Blades but to their respective corporations, EMI and RBP.

7. Taxes for the concert proceeds were paid by RBP to the Commonwealth of Puerto Rico.

8. MM&A is and at all relevant times was a corporation organized under the laws of the State Delaware and doing business in the State of New York.

9. MM&A was organized in 1999 and its business purpose was to provide booking and management agency services, including road managing for musical artists.

CIVIL 07-1380 (JA)                          9

10. At all relevant times, Mr. Morgalo and MM&A were involved in the business of promoting and representing performers of salsa and Latin music.

11. As an agent, Mr. Morgalo acknowledged a duty of diligence and loyalty to his clients, and a duty to let a client know when payments were received.

12. For their services MM&A received commissions.

13. Mr. Morgalo served as President of MM&A from November 1999 until January 2003.

14. MM&A has never been dissolved.

15. No written letter or corporate resolution exists for the resignation of Mr. Morgalo as President, or his substitution or discharge as officer of MM&A.

16. Arturo Martínez was Mr. Morgalo's business partner at MM&A.

17. At all relevant times Mr. Morgalo was a majority shareholder (51%) and owned a controlling interest in MM&A. Mr. Martínez owned 49% membership interest.

18. Mr. Morgalo had ongoing meetings on a daily basis with Mr. Martínez.

CIVIL 07-1380 (JA)                    10

19. On or about 2002, MM&A began negotiations for the performance of a reunion concert between Mr. Blades and Mr. Colón to commemorate the album *Siembra*.

20. On or about January 22, 2003, MM&A acting as joint agent for Mr. Blades and Mr. Colón, entered into an engagement contract with the firm of Dissar Production/Ariel Rivas for one concert performance in San Juan, Puerto Rico, for a total fee of $350,000 that was to be divided among Mr. Colón and Mr. Blades.

21. The engagement contract provided for one concert performance in San Juan for a total fee of $350,000 that was to be divided among Mr. Blades and Mr. Colón.

22. An "all-inclusive" fee means that the promoter does not pay for any travel or concert expenses, other than those stipulated in the engagement contract.

23. Pursuant to the engagement contract payment of the agreed to fee would be made to MM&A as agents for Mr. Blades and Mr. Colón.

24. MM&A was hired to act as managers for Mr. Blades and Mr. Colón with respect to the *Siembra* concert in return for a commission, and as such, MM&A acted as agents for both Mr. Blades and Mr. Colón and were to handle the collection and the disbursement of all remuneration payable to the artists.

CIVIL 07-1380 (JA)                    11

25. Pursuant to the engagement contract, both Mr. Blades and Mr. Colón were to be paid their full fee prior to traveling to San Juan.

26. Mr. Morgalo admitted having done a previous show with Mr. Colón and that all of his dealings with Mr. Colón and Mr. Blades were as an officer of MM&A.

27. During the first quarter of 2002, Mr. Morgalo acting as officer of MM&A, negotiated on behalf of Mr. Blades with Ariel Rivas the booking of a show with Danny Rivera to be performed in the Dominican Republic on March 16, 2002. The show never took place.

28. Mr. Morgalo acting as officer of MM&A, negotiated on behalf of Mr. Blades with Mr. Rivas, the booking of a show with Cheo Feliciano in Puerto Rico. The show was scheduled for December 7, 2002 and after it was cancelled by Mr. Rivas, it was rescheduled for February 16, 2003.

29. Mr. Rivas paid a deposit to MM&A in the amount of $62,500 for the Cheo Feliciano/Ruben Blades show to be held in Puerto Rico. Said show was cancelled and never took place.

30. The $62,500 received for the Cheo Feliciano/Ruben Blades show was applied as a credit toward the *Siembra* concert and said application is reflected in one of the existing engagement contract versions.

CIVIL 07-1380 (JA)                    12

31. Only Mr. Blades could have authorized such transaction.

32. Mr. Blades did not authorize application of the $62,500 as a credit against the *Siembra* fee.

33. The promoters paid the fee in full.

34. Mr. Colón received an up-front advance of $62,500 from MM&A.

35. Mr. Blades received an up-front advance of $68,000 from MM&A.

36. MM&A received a commission of $35,000 for the *Siembra* concert.

37. MM&A paid an up-front advance of $62,500 to Mr. Colón.

38. MM&A paid an up-front advance of $68,000 to Mr. Blades.

39. On January 16, 2003 Mr. Morgalo received a warning order from the U.S. Army to report to a base at Bethlehem, Pennsylvania on January 21, 2003.

40. On or about January 16, 2003 Morgalo had a farewell party at his house. Mr. Rivas attended said party and was informed by Mr. Morgalo that he had to do everything with Mr. Martínez.

41. Mr. Morgalo departed the United States on March 11, 2003.

42. The money paid in full by the promoters was used to settle other debts of MM&A.

CIVIL 07-1380 (JA)                         13

43. On April 29, Mr. Martínez tried to commit suicide, of which Mr. Morgalo subsequently learned.

44. MM&A was in financial distress.

45. Mr. Morgalo procured and obtained an Economic Injury Disaster Loan from the Small Business Association ("SBA").

46. The SBA loan was used to pay other loans.

47. Mr. Morgalo wrote a letter to Mr. Martínez while in prison explaining his intention to procure another SBA loan to solve the problems with Mr. Blades.

48. Mr. Morgalo sought a loan available for military personnel to pay the money that was owed to Mr. Blades.

49. Mr. Morgalo received a salary from MM&A.

50. Mr. Morgalo did not observe corporate formalities, referring to the manner of conducting business of MM&A as "flexible" and "informal leadership."

51. Mr. Morgalo loaned money to MM&A, some repaid, some not.

52. Mr. Martínez did not have the power to override Mr. Morgalo's decisions.

53. As to the *Siembra* concert, MM&A had no separate mind, will or existence of its own.

CIVIL 07-1380 (JA)                    14

54. Once informed on January 16, 2003, of his mobilization, Mr. Morgalo states he had no involvement with the business affairs of MM&A and that the last thing on his mind at that time were the affairs of the business.

55. According to Mr. Morgalo, once called to active duty Mr. Morgalo's obligations and duties were to the United States of America and not to Mr. Blades or Mr. Colón.

## III. ANALYSIS

As a general rule "shareholders . . . do not have standing to sue in their personal capacities unless the alleged misconduct causes harm to them separate and distinct from the injury inflicted upon the . . . corporation." Pagán v. Calderon, 448 F.3d 16, 29 (1st Cir. 2006).  "It is a basic principle of corporate law that corporate rights of action are distinct from stockholders' rights.  Where a cause of action exists in favor of a corporation, and action must be brought by the corporation itself in the corporate name, and cannot be brought by a stockholder on his or her own behalf."  F.C. Imports, Inc. v. First Bank of Boston, N.A., 816 F. Supp. 78, 87 (D.P.R. 1993) (citing In re Dein Host, Inc., 835 F.2d 402 (1st Cir. 1987)).  This is true "[e]ven when all the stock of a corporation is owned by a sole shareholder . . . ." Id. at 409.  "Exceptions to the general rule exist if the injury 'is peculiar to [the stockholder] alone or 'if it is absolutely inconceivable that the

CIVIL 07-1380 (JA)                              15

corporation itself would pursue a claim for the misconduct.'" <u>TC Investments,</u> <u>Corp. v. Becker</u>, ____ F. Supp. 2d _____, 2010 WL 2593525, * 12 (D.P.R. June 28, 2010) (quoting  <u>Pagán v. Calderon</u>, 448 F.3d at 28).  In case that none of the exceptions are met, "only the corporation, a receiver, or a stockholder acting derivatively in the corporation's name may sue to redress an injury to the corporation." <u>Id</u>. (citing <u>Bishay v. Am. Isuzu Motors, Inc.</u>, 404 F.3d 491, 495 (1st Cir. 2005)).

Cross-plaintiff asserts that he has standing because he was the one who suffered the injury alleged in the amended cross-claim.  (Docket No. 233, at 7.) He claims that having been initially blamed for the wrongful acts of MM&A and Mr. Morgalo, and having suffered an economic loss from the nonpayment of the *Siembra* concert funds, he has a personal stake in the outcome if this case.  (<u>Id</u>. at 9.)  Also, cross-plaintiff claims that the injury suffered is traceable to Mr. Morgalo's unlawful and negligent conduct, and redressable by the requested relief. (<u>Id</u>. at 10.)

Cross-defendants riposte that cross-plaintiff failed to rebut the argument as to his lack of standing claim and instead contest that he is the real party in interest.  (Docket No. 243, at 2.)  They argue that cross-plaintiff ignores that RBP is a corporation and that it was created to conduct business on behalf of its

CIVIL 07-1380 (JA)                         16

stockholders.  (Id. at 4.)  Cross-defendants thus insist that it was RBP and not cross-plaintiff who suffered the alleged injury, and had a business relationship with MM&A.  (Id. at 5.)  They claim that since the damages alleged in the amended cross-claim belong only to RBP, cross-plaintiff does not have any standing to assert them.  (Id.)  Cross-defendants are correct.

Cross-plaintiff fails to show that the injury alleged in the amended cross-claim is his alone. Aside from claiming that the injury was inflicted only upon himself, cross-plaintiff does not take the time to explain how and why it only affects him and not RBP.  This sophomoric argument cannot lead me to reasonably conclude that the alleged misconduct by cross-defendants only affects cross-plaintiff and not RBP in any way.  Furthermore, there is no indication that it would have been totally inconceivable for RBP to pursue the damages asserted by cross-plaintiff.  Thus, cross-plaintiff does not have any standing to sue cross-defendants in his personal capacity.  Nevertheless, this does not mean that amended cross-claim warrants dismissal.

Rule 17(a) of the Federal Rules of Civil Procedure directs that an action has to be "prosecuted in the name of the real party in interest." Lincoln Property Co. v. Roche, 546 U.S. 81, 91 (2005) (quoting Fed. R. Civ. P. 17(a)(1)).  Rule 17(a)'s requirement "is based on the principle that the pleadings in a case 'should be

CIVIL 07-1380 (JA)                    17

made to reveal and assert the actual interest of the plaintiff, and to indicate the

interests of any others in the claim.'" Agri-Mark, Inc. v. Niro, Inc., 190 F.R.D.

293, 295 (D. Mass. 2000) (quoting United States v. Aetna Cas. & Sur. Co., 338

U.S. 366, 382 (1949)).  Moreover, Rule 17(a)(3) states that:

> The court may not dismiss an action for failure to prosecute in the
> name of the real party in interest until, after an objection, a
> reasonable time has been allowed for the real party in interest to
> ratify, join, or be substituted into the action. After ratification, joinder,
> or substitution, the action proceeds as if it had been originally
> commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).  "It has been held that Rule 17(a) serves the purpose of

protecting defendants 'from facing a subsequent similar action brought by one not

a party to the present proceeding and to ensure that any action taken to

judgment will have its proper effect as *res judicata*.'" Pabon-Lugo v. MONY Life

Ins. Co. of America, 465 F. Supp. 2d 123, 128 (D.P.R. 2006) (quoting Prevor-

Mayorsohn Carribean, Inc. v. Puerto Rico Marine Management, Inc., 620 F.2d 1,

4 (1st Cir. 1980)).

Since cross-plaintiff does not have standing to sue cross-defendants, the

real party in interest in this case would have to be RBP.  However, cross-plaintiff

believes otherwise.  According to cross-plaintiff, the engagement contract was

executed in his name and for his benefit.  (Docket No.  233, at 10.)  He states

CIVIL 07-1380 (JA)                    18

that as beneficiary of the engagement contract he was entitled to one half of the

all-inclusive fee after the expenses were deducted.  (Id.)  Thus, he argues that he

has a legal right under Puerto Rico substantive law to enforce the claim in

question.  (Id. at 11.)  Specifically, cross-plaintiff claims that he is asserting his

right to be made whole by the agents that represented him, and failed to honor

their obligations converting funds paid by the *Siembra* promoters to settle other

debts.  (Id. at 12.)  In other words, cross-plaintiff claims that he is the real party

in interest because he is asserting his own rights, not the rights of RBP.  (Id.)

Although cross-plaintiff claims that the engagement contract was executed

on his behalf and for his benefit, the fact remains that the funds received for the

*Siembra* concert were paid to RBP.  Also, it was RBP not cross-plaintiff which paid

the taxes for said funds to the Commonwealth of Puerto Rico.  It is well settled

that "[a] real party in interest is one who, according to the substantive law,

possesses the right sought to be enforced and not necessarily the person who will

ultimately benefit from the recovery." Bass v. Campagnone, 655 F. Supp. 1390,

1392 (D.R.I. 1987) (citations omitted). As stated above, there is nothing that

might suggest that the injury allegedly suffered by cross-plaintiff is separate and

distinct from any injury that RBP might have also suffered as a result of cross-

defendants' actions.  On the contrary, the fact that cross-plaintiff is RBP's sole

CIVIL 07-1380 (JA)                              19

shareholder makes it even more difficult to find that he suffered some particularized injury.  He claims that in his dealing with MM&A he would determine how much money was going to be charged and when payment was going to be received.  (Docket No. 233, at 11.)  Cross-plaintiff's actions if anything defeat any possibility for me to find that the rights that are sought to be vindicated are his and not RBP's.  Any reasonable person would find that in taking these actions Cross-plaintiff and RBP's interests could be affected both positively and negatively.  Although cross-plaintiff claims that he is the ultimate beneficiary of recovery, he conducted all of his businesses through RBP.  Therefore, since RBP is the one who possesses the right sought to be enforced, cross-plaintiff is not the real party in interest.

Although I conclude that cross-plaintiff does not have standing and is not the real party in interest, I will not dismiss the amended cross-claim.  I will allow cross-plaintiff to amend the pleadings so that RBP may substitute him.  Although an amendment would have been preferable at the early stages of the case, allowing it now will not require re-opening discovery, create additional costs, and substantial changes to the course of the case. See  Caribbean Parts Agency, Inc. v. Hastings Mfg. Co., LLC, 262 F.R.D. 88, 90 (D.P.R. 2009); Maddalone v. Okada Shosen, KK,  756 F.2d 886, 887 (1st Cir. 1985) (holding that pleadings can be

CIVIL 07-1380 (JA)                              20

amended whenever justice so requires).  Also, the amendment must be allowed because it will not cause any prejudice to cross-defendants.  By permitting such an amendment it will prevent a subsequent similar action against cross-defendants. Furthermore, there is nothing that suggests that failing to name RBP as the real party in interest was done in bad faith.  If not for cross-defendants' belated challenge to cross-plaintiff capacity to sue, cross-plaintiff  would have still been under the wrong impression that the real party in interest was him and not RBP. See 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1542 (3d ed. 1990) (noting that failure to challenge a party's capacity either by motion at a very early stage in the proceeding or in the responsive pleading may result in a waiver of the defense).  "Negligence is not, per se, a bar to a substitution in the absence of any showing of prejudice."  Maddalone v. Okada Shosen, KK,  756 F.2d at 887.  In cases such as the present one, "where an honest mistake or inadvertent error is concerned, injustice is to be avoided by allowing the real party in interest to be substituted into the action."  Caribbean Parts Agency, Inc. v. Hastings Mfg. Co., LLC, 262 F.R.D. at 92.

IV. CONCLUSION

CIVIL 07-1380 (JA)                                21

For the reasons set forth above, cross-defendant's motion for summary is DENIED in its entirety.

At San Juan, Puerto Rico, this 2d day of September, 2010.

S/ JUSTO ARENAS
Chief United States Magistrate Judge