IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WILLIAM ANTHONY COLÓN,

    Plaintiff,

    v.

RUBÉN BLADES, *et al.*,

    Defendants;

RUBÉN BLADES PRODUCTIONS, INC.,

    Cross-Plaintiff,

    v.

ROBERT MORGALO, in his personal capacity and as owner and member of Martínez, Morgalo & Associates, LLC, *et al.*,

    Cross-Defendants.

Civil No. 07-1380 (BJM)

## OPINION AND ORDER

Ruben Blades Productions, Inc. ("RBPI") brought a cross-claim against Robert Morgalo ("Morgalo") and Martínez, Morgalo & Associates, LLC ("MM&A"), seeking to recover money allegedly owed under contracts for two concerts. MM&A defaulted (Docket No. 128), and a partial final judgment was entered for $133,168.16. (Docket No. 229). Before the court are (1) RBPI's motion for summary judgment against Morgalo (Docket No. 234), and (2) Morgalo's motions to dismiss for lack of subject matter jurisdiction and for summary judgment against RBPI.[1] (Docket No. 285). For the reasons that follow, RBPI's motion for summary judgment is **denied**. Morgalo's motion to dismiss for lack of subject matter jurisdiction is **denied**, and his motion for summary judgment is **granted**.[2]

---

[1] Morgalo's motion is captioned as one for summary judgment alone. However, a challenge to subject matter jurisdiction, though presented in a motion for summary judgment, should be analyzed under Rule 12(b)(1). See Nkihtaqmikon v. Bureau of Indian Affairs, 453 F.Supp.2d 193, 199 (D. Me. 2006); Caribbean Mushroom Co. v. Gov't Devel. Bank, 980 F.Supp. 620, 621 (D.P.R. 1997). For clarity, Morgalo's jurisdictional challenge is therefore treated separately from the rest of his motion.

[2] Morgalo also filed a separate suit in the Southern District of New York against Blades and RBPI for defamation, which was transferred to this district by agreement of the parties. (Docket No. 58). Blades and RBPI moved to dismiss Morgalo's separate suit (Docket No. 148) and the court granted the motion. (Docket No. 154). Morgalo

## PROCEDURAL BACKGROUND

William Anthony Colón ("Colón") sued Rubén Blades ("Blades"), Morgalo, and MM&A to recover a fee allegedly owed for a 2003 musical performance featuring Blades and Colón (the "*Siembra* concert"). (Docket No. 45). Ultimately, Colón voluntarily dismissed his claims. (Docket Nos. 194, 196). In the meantime, Blades brought a crossclaim against Morgalo and MM&A to recover the *Siembra* concert fee, as well as a deposit for a canceled 2002 concert with Cheo Feliciano (the "Cheo concert"). (Docket No. 56). The crossclaim alleged six causes of action: (1) breach of contract and fiduciary duty; (2) implied indemnity; (3) comparative indemnity; (4) declaratory relief; (5) equitable indemnity; and (6) contribution. (Id.). Blades voluntarily dismissed his second through sixth causes of action after Colón dismissed his claims. (Docket No. 233, p. 1–2).

Morgalo moved for summary judgment on Blades's crossclaim, arguing that RBPI, not Blades, was the real party in interest, and that Blades lacked standing to bring the claim. (Docket No. 230). The court denied Morgalo's motion, but ordered Blades to substitute RBPI for himself as cross-plaintiff. (Docket No. 245). Blades moved for summary judgment on the crossclaim's first cause of action. (Docket No. 234). The court denied Blades's motion, but later agreed to reconsider its ruling. (Docket Nos. 234, 281). Following RBPI's substitution (Docket No. 280), Morgalo opposed RBPI's motion for summary judgment, moved for summary judgment again, and moved to dismiss for lack of subject matter jurisdiction. (Docket No. 285-2). RBPI has not opposed Morgalo's motions.

## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Morgalo first moves to dismiss the crossclaim, arguing that the requirements of diversity jurisdiction are not met, alleging that both RBPI and Morgalo are both citizens of Florida. "[F]ederal jurisdiction is never presumed." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). Rather, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Puerto Rico Tel. Co. v. Telecomm's Reg. Bd. of Puerto Rico, 189 F.3d 1, 7 (1st Cir. 1999).

---

appealed the dismissal. (Docket No. 198). Morgalo's defamation suit is not at issue in the present motion, and nothing in this opinion has any effect on the suit or its pending appeal.

**William A. Colón v. Rubén Blades,** *et al.* Page 3
Civil No. 07-1380 (BJM)
**OPINION AND ORDER**

Challenges to subject matter jurisdiction come in two varieties. A defendant may challenge the legal sufficiency of the facts offered by the plaintiff, while assuming their accuracy; in that case, the court credits the plaintiff's factual allegations and draws reasonable inferences in its favor. Valentín v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). Alternatively, the movant may challenge the truth of the plaintiff's facts and proffer contrary evidence; the court then weighs the evidence to reach a conclusion. Id.

A district court has original jurisdiction of a civil action where the amount in controversy is at least $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a). Importantly, a party's citizenship is fixed at the time an action is commenced. Valentín, 254 F.3d at 361. A natural person is a citizen of the state where he is domiciled; that is, the state where he is physically present, with the intent to make that state his home. Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d 1027, 1029 (1st Cir. 1988). A corporation is deemed a citizen of "any State by which it has been incorporated and of the State where it has its principal place of business . . . ." § 1332(c)(1). In general, the substitution of a non-diverse party destroys diversity jurisdiction. Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 141–142 (1st Cir. 2004).

Morgalo alleges that RBPI is a New York corporation with a principal place of business in Florida, which RBPI admitted in the context of a different complaint consolidated with this case. (Docket No. 285-2, p. 4; Docket No. 73, ¶ 3; see S.D.N.Y. Civil No. 08-4079, Docket No. 1, ¶ 3). In both the original and amended crossclaims, Blades alleged Morgalo was a Pennsylvania citizen. (Docket No. 49, ¶ 4; Docket No. 56, ¶ 4). Though Morgalo argues that he is a citizen of Florida, Morgalo has not disputed that he was a Pennsylvania citizen when the case was filed. Indeed, Morgalo's answer to the amended crossclaim admitted that he resided in Pennsylvania "at the time of the filing of this action," but added that he had since become a resident of Florida. (Docket No. 67, ¶ 4). There is some ambiguity to this, as Morgalo does not indicate whether "this action" refers specifically to Blades's cross-complaint, or merely to Colón's complaint. But since Morgalo has never disputed Blades's allegation that he had Pennsylvania citizenship when the cross-complaint was filed on June 5, 2008, and has proffered no evidence to the contrary, there is no factual dispute;

I therefore construe Morgalo's motion to dismiss as raising a sufficiency challenge. Taking the crossclaim's allegations as true for the purposes of this challenge, I find that RBPI is a citizen of New York and Florida, Morgalo is a citizen of Pennsylvania, and the amount in controversy is over $75,000. The court therefore has jurisdiction under 28 U.S.C. § 1332.

## MOTIONS FOR SUMMARY JUDGMENT

**I.      Summary Judgment Framework**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The court does not weigh the facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Leary v. Dalton, 58 F.3d 748, 751 (1st Cir. 1995).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact." Crawford-El v. Britton, 523 U.S. 574, 600 n.22 (1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1). Once this threshold is met, the burden shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). However, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," Leary, 58 F.3d at 751, and an evaluating court may not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." Greenburg v. P.R. Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).

Nonetheless, summary judgment is appropriate where the nonmoving party rests entirely

**William A. Colón v. Rubén Blades,** *et al.*                                              Page 5
Civil No. 07-1380 (BJM)
**OPINION AND ORDER**

upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the claim. Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Where parties make cross motions for summary judgment, a court "must view each motion separately, perusing the record through the standard summary judgment prism." Gonzalez-Droz v. Gonzalez-Colón, 660 F.3d 1, 8 (1st Cir. 2011).

**II.      Factual Background**

The facts here are laid out after applying Local Rule 56, which structures the presentation of proof in the summary judgment context.[3]

### A.      Martínez, Morgalo & Associates

MM&A was a Delaware corporation authorized to do business in New York. (Morgalo St., ¶ 3). The parties dispute whether MM&A has since been dissolved, as opposed to being made inactive. (RBPI St. and Morgalo Opp., ¶¶ 3, 9). It was formed in 1999 with the purpose of providing booking and management agency services for musical artists. (RBPI St., ¶ 4).

---

[3]The rule "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," CMI Capital Mkt. Inv., LLC v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008), and prevents parties from "improperly shift[ing] the burden of organizing the evidence presented in a given case to the district court." Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007). The court has no duty to "independently search or consider any part of the record not specifically referenced in the parties' separate statement[s] of facts." Local Rule 56(e). Where there are cross motions for summary judgment, a district court should take special care that Local Rule 56 is "administered evenhandedly and applied consistently." See P.R. Am. Ins. Co. v. Rivera-Vasquez, 603 F.3d 125, 132 (1st Cir. 2010).

A motion for summary judgment must be supported by "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Local Rule 56(b). The party opposing a motion for summary judgment must admit, deny, or qualify the moving party's facts by reference to each numbered paragraph, and may make an opposing statement of material facts. Local Rule 56(c). Finally, a party replying to the opposition to a motion for summary judgment must admit, deny, or qualify the non-movant's facts, again in a separate statement and by reference to each numbered paragraph, Local Rule 56(d), and any of either party's facts not properly controverted as described by the rule is deemed admitted. Local Rule 56(e). All facts must be supported by citation to record evidence, else they are ignored. Id.

Blades, prior to RBPI's substitution, submitted a statement of facts supporting his motion. (Docket No. 234-2, p. 4–11, hereinafter "RBPI St."). Morgalo opposed it, substantially complying with the local rule. (See Docket No. 288, p. 10–19, hereinafter "Morgalo Opp."). Therefore, only those facts that Morgalo has not properly controverted are deemed admitted. See Local Rule 56(e). Morgalo also submitted a Local Rule 56(b) statement of facts in support of his motion, which RBPI has not opposed. (Docket No. 288, p. 2–10, hereinafter "Morgalo St."). Therefore, RBPI has not "properly controverted" Morgalo's supporting statement of material facts, and Morgalo's statement is deemed admitted to the extent it is supported by material that may be considered at summary judgment. See Local Rule 56(e).

MM&A's stockholders are Morgalo and Arturo Martínez ("Martínez"). (Morgalo St., ¶ 5). Morgalo and Martínez were business partners, and would meet on a daily basis. (RBPI St., ¶¶ 11, 13). Morgalo owned 51% of MM&A's stock, and Martínez owned 49%. (RBPI St., ¶ 12; Morgalo St., ¶ 6). Martínez lacked power to override Morgalo's decisions at MM&A. (RBPI St., ¶ 47). MM&A issued stock, held board and shareholder meetings, had a New York office, and maintained bank accounts separate from those of its officers. (Morgalo St., ¶¶ 7–10, 17). MM&A paid salaries to Morgalo and Martínez, and an outside company managed payroll. (Morgalo St., ¶¶ 11–12). MM&A paid separate taxes, paid dividends, and provided shareholders with appropriate tax filings. (Morgalo St., ¶¶ 13, 18–19). MM&A received loans from financial institutions. (Morgalo St., ¶ 20). MM&A received various sums of money in December 2002 connected to "Latin Nights at the Apollo." (Morgalo St., ¶¶ 14–16). One of MM&A's corporate records, a book containing minutes and board resolutions, was lost when Martínez was incarcerated for drug trafficking. (Morgalo St., ¶ 57). In his deposition, Morgalo characterized the business management as "flexible," with "informal leadership." (RBPI St., ¶ 45). The parties dispute whether MM&A was in financial distress. (RBPI St. and Morgalo Opp., ¶ 39).

Morgalo was an employee and officer of MM&A until January 16, 2003, serving as president. (RBPI St., ¶ 8; Morgalo St., ¶ 28). Morgalo personally loaned the corporation money at an unspecified point in time. (Morgalo St., ¶ 21). Morgalo said he had duties of diligence and loyalty to his clients, and a duty to let them know when payments were received. (RBPI St., ¶ 6). Morgalo had worked with Colón previously on a different show, and interacted with both Blades and Colón as an MM&A officer. (RBPI St., ¶ 21).

### B.  Rubén Blades Productions

RBPI is a New York S-corporation with a principal place of business in Boca Ratón, Florida. (Morgalo St., ¶ 2). RBPI is managed by Shustek & Associates, LLC. (Morgalo St., ¶ 24). Blades is RBPI's sole shareholder, and an employee. (Morgalo St., ¶ 25). MM&A performed booking duties for Blades through RBPI, and MM&A was paid commissions. (Morgalo St., ¶¶ 22–23).

MM&A's contact for RBPI was Jerry Howard Shustek of Shustek & Associates, LLC. (Morgalo St., ¶ 26). MM&A and RBPI were the only companies with authority to represent Blades. (Morgalo St., ¶ 27).

### C. MM&A's 2002 Dealings

In the first quarter of 2002, Morgalo, as an MM&A officer and on behalf of Blades, negotiated with Ariel Rivas ("Rivas") to book a show with Danny Rivera in the Dominican Republic in March 2002. (RBPI St., ¶ 22). Morgalo, as an MM&A employee, negotiated with César Sainzs ("Sainzs"), who represented a business called Rompeolas, to book a show for Blades in Puerto Rico, together with Cheo Feliciano ("the Cheo concert"). (Morgalo St., ¶ 29; RBPI St., ¶ 23). MM&A received a $62,500 deposit for the Cheo show, which was forfeit if the promoter canceled the show. (Id.). The parties dispute who actually paid the deposit and what happened to the money. (See Morgalo St., ¶¶ 30–31; RBPI St. and Morgalo Opp., ¶¶ 23–25).

### D. Morgalo's Call to Duty and Hiatus from MM&A

On January 16, 2003, Morgalo received a warning order from the U.S. Army to report to Bethlehem, Pennsylvania on January 21, 2003. (Morgalo St., ¶ 32; RBPI St., ¶ 34). Morgalo ceased to manage MM&A's affairs. (Morgalo St., ¶ 33). No written letter or corporate resolution marks Morgalo's resignation or substitution as president of MM&A. (RBPI St., ¶ 10). Martínez instead managed MM&A's affairs, including the *Siembra* concert. (Morgalo St., ¶ 34). At a surprise farewell party, Morgalo told Rivas to conduct further affairs through Martínez. (Morgalo St., ¶ 36; RBPI St., ¶ 35). From January 21, 2003 through his deployment to Iraq on March 11, 2003, Morgalo was on duty with the U.S. Army, "in lockdown." (Morgalo St., ¶ 37). Morgalo had no knowledge of MM&A's affairs until several months after the *Siembra* concert, due to his deployment in a combat zone. (Morgalo St., ¶ 38). Morgalo never saw any of the *Siembra* concert contracts. (Morgalo St., ¶ 41). Morgalo did not have access to MM&A's accounts after he was called to active duty. (Morgalo St., ¶ 56).

**William A. Colón v. Rubén Blades,** *et al.* Page 8
Civil No. 07-1380 (BJM)
**OPINION AND ORDER**

### E. The *Siembra* Concert Deal

MM&A began negotiating a concert between Blades and Colón in December 2002. (RBPI St., ¶ 14). Martínez negotiated the contract on behalf of MM&A. (Morgalo St., ¶ 47). Blades initiated contact with Colón regarding the *Siembra* concert. (Morgalo St., ¶ 39). MM&A entered an engagement contract as Blades's agent on January 22, 2003, to be paid $350,000 that would be split evenly between Colón and Blades. (RBPI St. ¶ 16, Morgalo St., ¶ 46). The parties dispute whether MM&A also represented Colón. (RBPI St. and Morgalo Opp., ¶ 15). At least three revisions of the *Siembra* concert engagement contract were produced in discovery, but all list Martínez as an agent on behalf of MM&A. (Morgalo St., ¶ 40). The promoters were to pay the fee to MM&A. (RBPI St., ¶ 18). The parties dispute whether the $62,500 deposit from the Cheo concert was credited to the *Siembra* concert. (See Morgalo St., ¶ 42; RBPI St. and Morgalo Opp., ¶ 28). Such disposition of the Cheo concert deposit would have required Blades's authorization, and he never authorized it. (RBPI St., ¶¶ 26–27). The artists were to be paid in full prior to traveling to San Juan. (RBPI St., ¶ 20). MM&A advanced $62,500 to Colón and $68,000 to Blades, and received a commission of $35,000. (RBPI St., ¶¶ 29–33). The parties dispute whether the concert fee was ever fully paid; Morgalo states that MM&A only received $287,500 — the full $350,000 fee less $62,500 — while RBPI asserts that the promoters paid the fee in full. (RPBI St., ¶ 28; Morgalo Opp., ¶ 37). All *Siembra* money that MM&A paid to the artists was paid to their operating corporations, rather than the artists personally. (Morgalo St., ¶ 50).

Martínez attempted to commit suicide on April 29, 2003; Morgalo only learned about this in July. (Morgalo St., ¶ 52). While hospitalized, Martínez gave Juan Toro, as a representative of Blades, access to the MM&A bank accounts. (Morgalo St., ¶ 53). Martínez is unsure what the account balances were. (Morgalo St., ¶ 54). Martínez now works for The Relentless Agency, which currently represents Blades. (Morgalo St., ¶ 55). MM&A funds were never diverted to Morgalo; the company instead used its funds to pay company debts. (Morgalo St., ¶ 58). Prior to the *Siembra* concert, MM&A had at least $49,000 in one of its bank accounts. (Morgalo St., ¶ 51). While

Martínez was in prison, Morgalo wrote to Martínez saying he intended to seek another loan to MM&A to resolve the Blades dispute. (RBPI St., ¶ 42). In response to a request for admissions, Morgalo admitted that MM&A had "no separate mind, will, or existence of its own" with respect to the *Siembra* concert. (RBPI St., ¶ 48).

### III. RBPI's Motion for Summary Judgment

RBPI's pleadings and motions are not a model of clarity, and it takes some effort to discern what its theories of recovery are. The cross-complaint's "First Cause of Action" alleges that Morgalo and MM&A "breached the said Engagement Contract by unlawfully converting the payments," that Morgalo and MM&A "owed a higher standard of care" as Blades's agent and "breached the said fiduciary duties," and that Blades suffered damages "[b]y reason of Cross-Defendant's [*sic?*] breach of the Engagement Contract." (Docket No. 56, ¶¶ 32–35). The motion for summary judgment recites a litany of hornbook rules for breach of contract, negligence, duty, and joint and several liability, ultimately arguing that (1) "As a result of Morgalo's *negligence* Blades suffered injury for which damages are sought" (emphasis added), yet (2) "The acts and omissions charged of Morgalo in the Amended Cross-Claim, arise *ex contractu*" (emphasis in original) (Docket No. 234-1, p. 3–11). The motion for summary judgment also makes an argument to pierce MM&A's corporate veil and hold Morgalo personally liable for the default judgment entered against MM&A. (Docket No. 234-1, p. 11–15).

Read generously, RBPI moves for summary judgment on four grounds: (1) that Morgalo is liable for breach of contract, (2) that Morgalo is liable for breach of fiduciary duty as an agent, (3) that Morgalo breached a duty as an MM&A officer, and (4) that Morgalo should be held personally liable for MM&A's judgment by piercing its corporate veil. I consider each of these in turn.

#### A. Breach of Contract

Under Puerto Rico law, the elements of a cause of action for breach of contract are (1) a valid contract, and (2) a breach by one of the parties to the contract. Torres v. Bella Vista Hospital, Inc., 523 F.Supp.2d 123, 152 (D.P.R. 2007) (citing F.C. Imports, Inc. v. First Nat'l Bank of Boston, 816

F.Supp. 78, 93 (D.P.R. 1993); Unisys P.R., Inc. v. Ramallo Brothers Pringing, Inc., 91 J.T.S. 69, 128 D.P.R. 842 (P.R. 1991)). Thus, "contracts are generally only valid between the parties who execute them," and "[a]ctions arising out of a contract can be prosecuted only by one contracting party against the other." F.C. Imports, 816 F.Supp. at 93 (citing 31 L.P.R.A. § 3374); Suárez v. Hernández, 56 P.R.R. 262, 268-69 (1940); Pérez Sánchez v. Advisors Mortgage Investors, Inc., 1992 JTS 61, 130 D.P.R. 530 (1992). Importantly, an agent is not generally bound by a contract he executes behalf of the principal. 31 L.P.R.A. § 4448.

As Morgalo points out, RBPI offers no evidence showing that Morgalo was a party to the contracts for either the *Siembra* concert or the Cheo concert. (Docket No. 285-2, p. 7). Rather, RBPI concedes that Morgalo represented Blades "as an officer of MM&A." (RBPI St., ¶¶ 21, 23). Thus, even if Morgalo negotiated either or both of the deals on behalf of MM&A, he is not personally liable on the contracts unless RBPI can show that he consented to be bound personally, rather than as MM&A's agent. RBPI has offered no evidence of this, and is therefore not entitled to judgment on this theory.

### B. Duty as Blades's Agent

RBPI argues that Morgalo owes it a fiduciary duty as an agent. An agent is a person who has contracted "to render some service, or to do something for the account or at the request of another." 31 L.P.R.A. § 4421. The principal's offer of authority may be express or implied, inferred "from the acts of the principal, from acts or deeds which manifestly reveal such declaration of consent necessarily implying, evidently and clearly, the intent to be bound." Bank of Nova Scotia v. Vélez Rullán, 91 P.R.R. 347, 353 (1964) (citing 31 L.P.R.A. § 4422); see CMI Capital Mkt. Inv., LLC v. Municipality of Bayamón, 410 F.Supp.2d 61, 75 (D.P.R. 2006). The agent's acceptance of authority "may also be express or implied, the latter being inferred from the acts of the agent." 31 L.P.R.A. § 4422. An agent is liable to a principal for fraud and negligence. 31 L.P.R.A. § 4449.

RBPI argues in its motion for summary judgment that Morgalo breached a duty he owed as Blades's agent. (Docket No. 234-1, p. 3–11). As Morgalo persuasively points out, however, RBPI

**William A. Colón v. Rubén Blades,** *et al.*                                                                     Page 11
Civil No. 07-1380 (BJM)
**OPINION AND ORDER**

has not brought forth any evidence that Morgalo personally acted as an agent for either Blades or RBPI. (Docket No. 285-2, p. 6). Specifically, RBPI offers no evidence showing that Morgalo accepted a role as Blades's agent in his personal capacity. Absent this element, no agency relationship exists under Puerto Rico law. Because RBPI has not presented evidence of an agency relationship between Morgalo and Blades or RBPI, it is not entitled to summary judgment on this theory.

        C.        **Duty as Officer of MM&A**

RBPI argues that Morgalo, as an officer of MM&A, personally owed Blades and/or RBPI a fiduciary duty. (Docket No. 267, p. 9–15). Morgalo responds that claims against him for damages under Article 1802 are time-barred. (Docket No. 285-2, p. 5). To evaluate this defense, it is necessary to consider the nature of the action for breach of this fiduciary duty, and thus which statute of limitations applies.

Article 1802 of the Puerto Rico Civil Code establishes liability for "[a] person who by an act or omission causes damage to another through fault or negligence." 31 L.P.R.A. § 5141. Thus, regardless of whether a corporate officer was acting as an agent of his corporation, he "is liable for torts in which he personally participated." Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 907 (1st Cir. 1980). Actions for "obligations arising from the fault or negligence mentioned in section 5141" are subject to a one-year statute of limitations. 31 L.P.R.A. § 5298; Ramos Lozada v. Orientalist Rattan Furniture Inc., 130 D.P.R. 712, 718, 1992 P.R.-Eng. 755,597. However, Article 1802 and its one-year limitations period do not govern actions for breach of an already-existing obligation. Commonwealth *ex rel.* Municipality of Cayey v. Soto Santiago, 131 D.P.R. 304, 313, 1992 P.R.-Eng. 754,881. Such actions are subject to the general fifteen-year statute of limitations. 31 L.P.R.A. § 5294; Ramos Lozada, 130 D.P.R. at 717.

Puerto Rico law has recognized such pre-existing obligations in, among others, actions against an agent for profits earned in breach of fiduciary duty, McCormick v. Gonzalez, 49 P.R.R. 460, 472–73 (1936), against a landlord for failure to repair, Arroyo v. Caldas, 68 P.R.R. 639, 641–42

(1948), and against a public employee for misappropriating money, Soto Santiago, 131 D.P.R. at 314–15. However, Article 1802 and its statute of limitations control where "[t]he parties . . . did not enter into negotiations to establish rights or obligations between them." Santiago Nieves v. A.C.A.A., 19 P.R. Offic. Trans. 755, 762 (P.R. 1987).

In Santiago Nieves, a widow of a man killed in an auto accident was entitled to compensation payments from the Automobile Accident Compensation Administration (ACAA). Id. at 757. On the widow's application, ACAA's Executive Director ordered the accounting department to pay for the construction of a new home, with two disbursements to be made as construction of the home progressed and was verified. Id. at 758. However, ACAA paid the money all at once, and the contractors disappeared without completing the home. Id. The Supreme Court held that the widow's subsequent action against ACAA arose under Article 1802, and the one-year statute of limitations applied. Id. at 761. While the widow argued that the Director created a contract, the court reasoned that Article 1802 applied because no meeting of the minds occurred between the director and the widow; the Director was instead carrying out the duties and exercising discretion as required under the ACAA's law and regulations. Id. at 761–63.

Though it did not oppose Morgalo's statute of limitations defense, RBPI has argued that Morgalo owed Blades and/or RBPI a duty to prevent MM&A from misappropriating concert fees. (Docket No. 267, p. 9–15) (citing Forastieri v. Eastern Air Lines, Inc., No. 79-2544, 1983 WL 364564 (D.P.R. July 5, 1983)). In Forastieri, the district court held a travel agency's directors personally liable for ticket money the corporation owed to an airline, reasoning that the corporation became a trustee for the airline when it collected the money. 1983 WL 364564, at **5–8. The court found that the directors breached their "direct duty" to the airline of prudently administering the trust. Id. at *6. But importantly, the court did not analyze what causes of action the directors were liable under, or what statute of limitations should apply.

Applying Puerto Rico law, I find that RBPI has not shown Morgalo, as opposed to MM&A, to be subject to a pre-existing obligation, and therefore the cause of action arises under Article 1802.

**William A. Colón v. Rubén Blades,** *et al.* Page 13
Civil No. 07-1380 (BJM)
**OPINION AND ORDER**

As RBPI correctly points out, there is no dispute that MM&A was an agent for Blades and/or RBPI. But RBPI had no "meeting of minds giving rise to an obligation, situation, or state of law resulting from an agreement" with Morgalo himself. See Santiago Nieves, 19 P.R. Offic. Trans. at 762. Thus, even assuming that MM&A could be considered RBPI's trustee,[4] there is no evidence that Morgalo himself had a pre-existing obligation under Puerto Rico law that would take RBPI's cause of action against him out of the ambit of Article 1802. Pre-existing obligations arise out of voluntary negotiated relationships — landlord and tenant, agent and principal, employee and employer — even though the terms of the obligation itself may be supplied by law. But here, no meeting of RBPI and Morgalo's minds is evident, and RBPI offers no evidence that they otherwise bound themselves to one another.

Thus, assuming Morgalo breached his duty to RBPI, the cause of action is under Article 1802, and is subject to a one-year statute of limitations. Blades filed his original crossclaim against Morgalo on June 5, 2008. (See Docket No. 48). To present its claim, RBPI must be able to show that it lacked knowledge of its injury prior to June 5, 2007, or that the statute of limitations was otherwise tolled. See Rivera Encarnación v. Commonwealth, 13 P.R. Offic. Trans. 498 (P.R. 1982) (plaintiff has burden of proving a later date of knowledge). Because the *Siembra* deal took place in 2003 (RBPI St., ¶ 16) and RBPI has proffered no evidence to meet its burden, RBPI is not entitled to summary judgment on this claim.

### D. Piercing the Corporate Veil

Finally, RBPI contends that it may hold Morgalo liable by piercing the corporate veil of MM&A. A corporation's legal personality and assets "are separate and distinct from those of its stockholders." DACO v. Alturas de Florida Devel. Corp., 132 D.P.R. 905, 924, 1993 P.R.-Eng. 840,226. However, a plaintiff may hold a corporation's owners personally liable for the corporation's debts by proving (1) that "there is no adequate separation between the corporation and

---

[4] It is not necessary to decide this, but for an overview of the trust (*fideicomissum*) under Puerto Rico law and its history as a blended civil-law/common-law construction, see Davila v. Agrait, 16 P.R. Offic. Trans. 674 (1985).

the stockholder," and (2) that piercing the corporate veil is necessary to avoid "sanctioning fraud, promoting injustice, evading a legal obligation, defeating public policy, justifying inequity, protecting fraud, or defending crime." Id. at 927. This proof must be made by "strong and robust evidence." San Miguel Fert. Corp. v. P.R. Drydock, 94 P.R.R. 403, 409 (P.R. 1967). Factors indicating a lack of adequate separation include:

> (1) the stockholder's control of corporate affairs; (2) the treatment of corporate assets as personal assets; (3) the unrestricted withdrawal of corporate capital; (4) the commingling of corporate and personal assets; (5) the inadequate structure of corporate capital; (6) the lack of corporate records; (7) the nonobservance of corporate formalities; (8) inaction of the other officers and directors; (9) failure to declare dividends; (10) the stockholder's holding himself or herself out as being personally liable for the obligations of the corporation; and (11) management of the corporation without regard to its independent existence.

Alturas, 132 D.P.R. at 928 n. 3 (citing 1 W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 41.10, 41.35, and 41.72). Courts "must be cautious" when scrutinizing corporations owned by a sole natural person; close ownership alone is not grounds for liability, though such ownership may nonetheless "facilitate the use of these corporations for illegitimate purposes." Id. at 926.

RBPI is not entitled to judgment because Morgalo has proffered evidence creating a genuine dispute as to whether MM&A was adequately separate from himself. He points to MM&A's issuance of stocks, holding regular board and shareholder meetings, keeping separate bank accounts, making tax filings, paying dividends and salaries, and keeping a (now-missing) minutes book. (Morgalo St., ¶¶ 7–10, 13, 17–19). Because this is evidence from which a reasonable fact-finder may conclude that MM&A's legal personality was adequately separate from Morgalo, RBPI is not entitled to summary judgment.

**IV. Morgalo's Motion for Summary Judgment**

For the reasons discussed above, Morgalo has established that he cannot be held directly liable for the Cheo or *Siembra* concert money on the proof offered by RBPI. RBPI has produced no evidence showing that Morgalo was a party to any of the relevant contracts. RBPI has produced no evidence showing that Morgalo acted as an agent of Blades or RBPI. Finally, the one-year statute

of limitations under Article 1802 applies to RBPI's breach-of-duty claim, and RBPI has produced no evidence showing that it had not run by the time the crossclaim was filed on June 5, 2008. Therefore, Morgalo is entitled to summary judgment on these three claims.

To survive summary judgment on its veil-piercing theory, RBPI must show there is a genuine issue of fact as to (1) whether there was adequate separation between MM&A and Morgalo, and (2) whether "acknowledging [MM&A's] legal personality would be tantamount to 'sanctioning fraud, promoting injustice, evading a legal obligation, defeating public policy, justifying inequity, protecting fraud, or defending crime." See Alturas, 132 D.P.R. at 927. With respect to the second element, the underlying fact of a corporation's liability, without more, does not rise to the level of injustice or inequity:

> Any breach of contract and any tort . . . is, in some sense, an injustice. Obviously this type of "injustice" is not what is contemplated by the common law rule that piercing the corporate veil is appropriate only upon a showing of fraud or something like fraud. The underlying cause of action does not supply the necessary fraud or injustice. To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping.

Mobil Oil Corp. v. Linear Films, Inc., 718 F.Supp. 260, 268 (D.Del. 1989). Rather, "the fraud, injustice or unfairness must be in the *use of the corporate form*." ASARCO LLC v. Americas Mining Corp., 396 B.R. 278, 321 (S.D.Tex. 2008) (emphasis in original). For instance, transferring a corporation's assets in a "shell game" of separate entities could constitute the injustice or unfairness that warrants veil-piercing. Id.

Here, RBPI has pointed to no evidence that Morgalo and MM&A manipulated or used the corporate form to his detriment. RBPI's only argument in support of the fraud/inequity prong is that RBPI's judgment against MM&A will never be satisfied, and Morgalo "authorized and/or permitted" the misapplication of concert funds. (Docket No. 267, ¶ 13). This is not an abuse of the corporate form, but rather an ordinary consequence of the limited liability of a corporation's owners. Similarly, the fact that the statute of limitations has run on RBPI's direct action against Morgalo does not constitute an injustice that warrants veil piercing. Because there is no evidence from which a rational fact finder may conclude that MM&A's separate form sanctions fraud or injustice, Morgalo is entitled to summary judgment on this claim.

**William A. Colón v. Rubén Blades,** *et al.*                                                                                    Page 16
Civil No. 07-1380 (BJM)
**OPINION AND ORDER**

## CONCLUSION

For the foregoing reasons, RBPI's motion for summary judgment is **DENIED**. Morgalo's motion to dismiss for lack of subject matter jurisdiction is **DENIED**. Morgalo's motion for summary judgment is **GRANTED**. RBPI's claims against Morgalo are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 27th day of December, 2011.


                                                                *S/ Bruce J. McGiverin*
                                                                BRUCE J. McGIVERIN
                                                                United States Magistrate Judge