IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **WILLIAM ANTHONY COLÓN**, <br><br> Plaintiff, <br><br> v. <br><br> **RUBÉN BLADES**, *et al.*, <br><br> Defendants. <br><br>  **ROBERT MORGALO**, <br><br> Plaintiff, <br><br> v. <br><br> **RUBÉN BLADES**, *et al.*, <br><br> Defendants. | Civil No. 07-1380 (BJM) <br><br><br><br> (consolidated case) |

## OPINION AND ORDER

In this diversity action, Robert Morgalo ("Morgalo") sued Rubén Blades ("Blades") and Rubén Blades Productions, Inc. ("RBPI"; collectively, "defendants") for defamation over statements made at a May 8, 2007 press conference. (S.D.N.Y. No. 1:08-cv-04079-LTS, Docket No. 1, hereinafter "Compl."). The action was transferred to this district by joint stipulation and consolidated with a related action. (Docket Nos. 58, 68). Before the court is Morgalo's motion for summary judgment. (Docket No. 322). Defendants opposed (Docket No. 323) and Morgalo replied (Docket No. 326). For the reasons that follow, Morgalo's motion is **denied**.

### FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts of the case are summarized here after applying Local Rule 56, which

structures the presentation of proof at summary judgment.[1] Of note here is defendants' failure to separately admit, deny, or qualify Morgalo's statement of facts. While they purport to deny proposed fact number eight in their opposing motion, this freestanding assertion is not consistent with the letter or purpose of the rule. (See Docket No. 323, p. 6). To the extent it is supported by competent record evidence, Morgalo's statement is therefore **deemed admitted.**

RBPI is a New York S-corporation with a principal place of business in Boca Ratón, Florida. It is managed by Shustek & Associates, LLC. Blades is RBPI's sole shareholder, and an employee. Martínez, Morgalo & Associates ("MM&A") performed booking duties for Blades through RBPI, and MM&A was paid commissions. MM&A's contact for RBPI was Jerry Howard Shustek of Shustek & Associates, LLC. MM&A and RBPI were the only companies with authority to represent Blades. (Docket No. 322-1, hereinafter "Pl. St.," ¶ 2).

MM&A was a Delaware corporation authorized to do business in New York. It was formed in 1999 with the purpose of providing booking and management agency services for musical artists. (Pl. St., ¶ 3). Its stockholders are Morgalo and Arturo Martínez ("Martínez"). (Pl. St., ¶ 5). Morgalo was an employee and officer of MM&A until January 16, 2003, serving as president. (Pl. St., ¶ 6).

---

[1] The rule "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008), and prevents parties from "shift[ing] the burden of organizing the evidence presented in a given case to the district court." Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007). The penalty for noncompliance is severe: "If the party opposing summary judgment fails to comply with Local Rule 56(c), the rule permits the district court to treat the moving party's statement of facts as uncontested." Id. Thus, litigants ignore the rule "at their peril." Id.
    A motion for summary judgment must be supported by "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Local Rule 56(b). The opposing party must admit, deny, or qualify the moving party's facts by reference to each numbered paragraph, and may make a separately numbered statement of material facts. Local Rule 56(c). The moving party may reply and admit, deny, or qualify the opponent's newly-stated facts, again in a separate statement and by reference to each numbered paragraph. Local Rule 56(d). Any facts supported by citation to record evidence and not properly controverted as described by the rule are deemed admitted. Local Rule 56(e).

In the first quarter of 2002, Morgalo, as an MM&A officer and on behalf of Blades, negotiated with Ariel Rivas ("Rivas") to book a show with Danny Rivera in the Dominican Republic in March 2002. Morgalo, as an MM&A employee, negotiated with César Sainzs ("Sainzs"), who represented a business called Rompeolas, to book a show for Blades in Puerto Rico, together with Cheo Feliciano ("the Cheo concert"). MM&A received a $62,500 deposit for the Cheo concert, which was forfeit if the promoter canceled the show. (Id.). The parties dispute who actually paid the deposit and what happened to the money. (Pl. St., ¶ 7).

On January 16, 2003, Morgalo received a warning order from the U.S. Army to report to Bethlehem, Pennsylvania on January 21, 2003. Morgalo ceased to manage MM&A's affairs. No written letter or corporate resolution marks Morgalo's resignation or substitution as president of MM&A. Martínez instead managed MM&A's affairs, including the "*Siembra* concert."[2] At a surprise farewell party, Morgalo told Rivas to conduct further affairs through Martínez. From January 21, 2003 through his deployment to Iraq on March 11, 2003, Morgalo was on duty with the U.S. Army, "in lockdown." Morgalo had no knowledge of MM&A's affairs until several months after the *Siembra* concert, due to his deployment in a combat zone. Morgalo never saw any of the *Siembra* concert contracts. Morgalo did not have access to MM&A's accounts after he was called to active duty. (Pl. St., ¶ 8). MM&A paid *Siembra* money to the artists' operating corporations, rather than to them personally. (Pl. St., ¶ 9).

Martínez attempted to commit suicide on April 29, 2003; Morgalo only learned about this in July. While hospitalized, Martínez gave Juan Toro, as a representative of Blades, access to the MM&A bank accounts. Martínez is unsure what the account balances were. Martínez now works for The Relentless Agency, which currently represents Blades. MM&A funds were never

---

[2] The disposition of money from the *Siembra* concert was the subject of the Colón-Blades-Morgalo dispute, though Morgalo's statement of facts does not thoroughly explore this entire background. See generally Colón v. Blades, Civil No. 07-1380 (BJM), 2011 WL 6792759, 2011 U.S. Dist. LEXIS 148398 (D.P.R. Dec. 27, 2011).

diverted to Morgalo; the company instead used its funds to pay company debts. (Morgalo St., ¶ 58). Prior to the *Siembra* concert, MM&A had at least $49,000 in one of its bank accounts. While Martínez was in prison, Morgalo wrote to Martínez saying he intended to seek another loan to MM&A to resolve the Blades dispute. In response to a request for admissions, Morgalo admitted that MM&A had "no separate mind, will, or existence of its own" with respect to the *Siembra* concert. (Pl. St., ¶ 10).

Colón later sued Blades. (Docket No. 1). On May 8, 2007, Blades held a press conference in Panama, which was the subject of stories by the Associated Press and People En Español. The reports quote Blades as saying he did not understand why Colón sued him, and that both he and Colón were "robbed" by Martínez and Morgalo—"*nos robaron a los dos.*"[3] (Pl. St., ¶ 11; Compl., p. 9-22). In Morgalo's view, he never robbed Blades. In unidentified other instances, Blades "continues" to say that Morgalo robbed him. The phrase has had a "devastating effect" on Morgalo's career and emotional state, and prompted him to seek unidentified medical treatment.[4] (Pl. St., ¶¶ 12-17).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[3] This court only considers evidence in the English language. Local Rule 5(g). Out of an abundance of caution, I will exclusively rely on the English translation of the reports of Blades's press conference. See Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008) (mandating English record in Puerto Rico district court). But in an action for defamation, common sense and persuasive authority suggest that the challenged statements are better considered in the original Spanish, especially when First Amendment concerns loom. In a libel case against a Spanish-language newspaper, the Third Circuit wisely reasoned:
> We are not willing to base an actual malice determination solely on the translation to English from Spanish of the language used by the defendant. We have decided that the *New York Times* standard must be applied to the actual words used by the defendant . . . . If the language is Spanish, we must apply the standard to Spanish. We proceed in this manner because we believe that a translation may not always reflect the nuances and subtleties of the original language.

Dunn v. Gannett N.Y. Newspapers, Inc., 833 F.2d 446, 452 (3d Cir. 1987) (internal citation omitted).

[4] This is an intentionally flat rendition of Morgalo's last few statements of fact, which intertwine legal conclusions (e.g., Pl. St., ¶ 17, "Blades has continued to *defame* Mr. Morgalo") (emphasis added) with unfounded speculation (e.g., Pl. St., ¶ 12, "Blades knew or should have known it was false."). Because these types of assertions are inadmissible, I have disregarded them notwithstanding defendants' failure to oppose Morgalo's statement.

R. Civ. P. 56(a).  A fact is material only if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).  The court does not weigh the facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Leary v. Dalton, 58 F.3d 748, 751 (1st Cir. 1995).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact."  Crawford-El v. Britton, 523 U.S. 574, 600 n.22 (1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1).  Once this threshold is met, the burden shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). However, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," Leary, 58 F.3d at 751, and an evaluating court may not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." Greenburg v. P.R. Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).  Nonetheless, summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the claim.  Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## DISCUSSION

Morgalo argues that Blades's statements result in liability under the defamation per se doctrine.  Defendants' opposition raises a panoply of privileges and other theories to avoid

judgment, but it is only necessary to focus on one here: whether Blades's comments are merely hyperbolic, and therefore not defamatory per se. Under Puerto Rico law,[5] defamation entails making a negligently false statement to another person, causing damages to the subject of the statement. Ojeda-Rodríguez v. Zayas, 666 F. Supp. 2d 240, 254-55 (D.P.R. 2009) (citing Torres Silva v. El Mundo, Inc., 18 P.R. Offic. Trans. 229 (1987)); González Pérez v. Gómez Aguila, 312 F. Supp. 2d 161, 173 (D.P.R. 2004). The First Amendment further requires "public figure" defamation plaintiffs to prove fault to the more onerous "actual malice" standard. See Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 11-12 (1st Cir. 2011) (collecting cases). When the statement accuses the subject of committing a crime (traditional "defamation per se"), the damages element need not be separately established. González Pérez, 312 F. Supp. 2d at 174; Gierbolini Rosa v. Banco Popular de P.R., 930 F. Supp. 712, 716-17 (D.P.R. 1996).

Morgalo is not entitled to summary judgment because he has not shown that Blades's statements impute him with a criminal offense as a matter of law.[6] Although defendants frame the argument in First Amendment terms that need not be explored here, they are substantively correct: a rational fact-finder may conclude that when viewed in context, the comment that Morgalo and Martínez "robbed" Blades and Colón has a figurative, non-criminal meaning. In common usage, the verb "to rob" may refer to both the commission of a criminal offense ("[t]o take property from (a person or persons) illegally by using or threatening to use violence or force; commit robbery upon"), as well as other types of wrongful deprivations ("[t]o deprive (a person) unjustly of something belonging to, desired by, or legally due to him: *rob a person of his reputation.*"). American Heritage Dictionary (2d college ed. 1982); cf. Black's Law Dictionary

---

[5] It is not necessary to resolve whether another jurisdiction's substantive law of defamation applies, as Morgalo is not entitled to summary judgment under the Puerto Rico legal principles articulated in his motion. Should the substantive law selected by the proper application of choice-of-law rules allow Morgalo to prevail, it is his burden as movant to set forth that basis for judgment.

[6] Because Morgalo's status as either a private or public figure does not affect this conclusion, this opinion does not resolve that question at this stage.

(defining robbery as "The illegal taking of property from the person of another, or in the person's presence, by violence or intimidation; aggravated larceny.") (9th ed. 2009). Here, in both the Associated Press and People En Español reports, Blades is also quoted as saying that Martínez and Morgalo "misspent" ("*malgastaron*") the Siembra concert funds. It would therefore be permissible, though not compulsory, to conclude that Blades used "robbed" in its broader, non-criminal sense. As a result, Morgalo has not established defamation per se as a matter of law.

## CONCLUSION

For the foregoing reasons, Morgalo's motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 2nd day of November, 2012.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge